1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    THEON KAMBON,                               No.  12-cv-2651 KJM KJN P

12                      Plaintiff,

13          v.                                    FINDINGS AND RECOMMENDATIONS

14    CALIFORNIA DEPARTMENT OF
      CORRECTIONS AND
15    REHABILITATION, et al.,

16                      Defendants.

17

18          Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant

19    to 42 U.S.C. § 1983.  Pending before the court is plaintiff's second amended complaint filed May

20    30, 2013.  For the following reasons, the undersigned recommends that this action be dismissed.

21          Plaintiff's second amended complaint includes the same claims as were raised in the

22    amended complaint.  Plaintiff alleges that defendants damaged his television.  Plaintiff also

23    alleges that defendants lost his personal property, legal property and legal mail.  In the second

24    amended complaint, plaintiff addresses the court's May 7, 2013 order finding that the claims

25    raised in the amended complaint were not colorable.

26          The exhibits attached to the second amended complaint describe plaintiff's claims in

27    greater detail.  Accordingly, the undersigned refers to these exhibits when describing plaintiff's

28    claims.

1

1     *Defendants*

2     Named as defendants are the Director of the California Department of Corrections and

3 Rehabilitation ("CDCR"), California Correctional Institution ("CCI") Lieutenant Lesniak, CCI

4 Associate Warden Bryant, CCI Deputy Warden Holland, CCI Sergeant Peters, CCI Correctional

5 Officer Gray, CCI Correctional Officer Negrete, CCI Operations Captain Schuyler, CCI Appeals

6 Coordinator Nelson, High Desert State Prison ("HDSP") Correctional Officer Carter, HDSP

7 Sergeant Davidge, CCI Facility Captain Davis, CCI Correctional Sergeant Wedertz, CDCR Chief

8 of Appeals Fosten, CCI Warden, CCI Correctional Officer Carter and HDSP Associate Warden

9 Perez,

10     *Television*

11     Plaintiff alleges that on December 13, 2011, he transferred from the California

12 Correctional Institution ("CCI") to High Desert State Prison ("HDSP").  (ECF No. 20 at 34.)

13 Plaintiff alleges that when he arrived at HDSP, his television would not work.  (Id. at 19, 35.)

14 Plaintiff alleges that his television was damaged during transport from CCI to HDSP.  (Id.)

15     Plaintiff also alleges that prison officials, apparently at CCI, damaged his television at

16 some time prior to the transfer, by removing the speakers without plaintiff's authorization. (Id. at

17 18.)  This claim is separate from the claim regarding damage of the television during transport

18 from HDSP to CCI.

19     Plaintiff alleges that that the speakers were removed pursuant to a CCI policy and

20 procedure which prohibits inmates from possessing televisions with speakers. (Id. at 18, 34.)

21 Plaintiff alleges that he was informed that if inmates do not consent to the removal of the

22 speakers, the televisions are either sent home or destroyed.  (Id. at 34.)  Plaintiff did not consent

23 to the removal of the speakers, but they were removed nevertheless in violation of policy and

24 procedure.  (Id. at 34.)

25     The United States Supreme Court has held that "an unauthorized intentional deprivation

26 of property by a state employee does not constitute a violation of the procedural requirements of

27 the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for

28 the loss is available."  Hudson v. Palmer, 468 U.S. 517, 533 (1984).  Thus, where the state

1    provides a meaningful postdeprivation remedy, only authorized, intentional deprivations

2    constitute actionable violations of the Due Process Clause.  An authorized deprivation is one

3    carried out pursuant to established state procedures, regulations, or statutes.  Piatt v. McDougall,

4    773 F.2d 1032, 1036 (9th Cir. 1985); see also Knudson v. City of Ellensburg, 832 F.2d 1142,

5    1149 (9th Cir. 1987).

6             Plaintiff's claim regarding the alleged damage to his television during the transfer to

7    HDSP is based on an unauthorized, and most likely, unintentional, deprivation.  Plaintiff does not

8    allege that his television was damaged pursuant to an official policy.  The California Tort Claim

9    Act, Cal. Govt. Code § 810, provides an adequate post-deprivation remedy for the loss of

10   property and an inmate may file a state action in tort once he has complied with the claim

11   requirements of the State Board of Control.  See Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir.

12   1994.)  For these reasons, plaintiff's claims regarding the damage to his television during transit

13   are not colorable.

14            Plaintiff alleges that prison officials at CCI removed the speakers without his permission,

15   nor was the television with speakers sent home or destroyed, all in violation of prison policy.

16   Therefore, plaintiff is alleging that the removal of the speakers was not an authorized deprivation.

17   For this reason, the undersigned finds that plaintiff's claim regarding the removal of the speakers

18   does not state a colorable due process claim.

19            For the reasons discussed above, plaintiff's due process claims regarding his television

20   should be dismissed.

21            *Miscellaneous Property*

22            Plaintiff's administrative grievances addressing the alleged deprivation of miscellaneous

23   property, attached as exhibits to the second amended complaint, explain this claim in greater

24   detail.

25            Plaintiff alleges that on or around March 2011, he was placed in the CCI Security Housing

26   Unit ("SHU").  (ECF No. 20 at 61.)  Plaintiff was allowed to have six boxes of property while in

27   the SHU.  (Id.)  Plaintiff elected to have the non-allowable property mailed home.  (Id.)  Plaintiff

28   alleges that he signed the property inventory form without reviewing what was in the six boxes.

                                                      3

1    (Id.)  Plaintiff alleges that after he received the boxes, he realized that some property was missing

2    including legal paperwork, 28 photographs, a knee brace, shoe inserts, soft shoes, migraine

3    medication and a Quran.  (ECF No. 20 at 73.)

4            According to the administrative grievances, plaintiff's Quran and 27 photographs were

5    found and issued to plaintiff.  (Id. at 72.)  Regarding the medical appliances, medical staff stated

6    that while there was a doctor's order from another institution prescribing a knee brace and shoe

7    inserts, there were no current medical chronos for these devices.  (Id. at 62.)  In addition, there

8    was no doctor's order for soft shoes or migraine medication.  (Id.)

9            Because plaintiff's Quran and 27 of his 28 photographs were found, plaintiff is apparently

10   challenging the denial of his access to his legal property, medical appliances, migraine medication

11   and one photograph.

12           The responses to plaintiff's administrative grievances regarding the missing medical

13   appliances and medication indicate that the items were withheld because they were not

14   authorized.  Therefore, the alleged deprivations were intentional and authorized in that they were

15   carried out pursuant to a policy.  In relevant part, the first level appeal response states,

16               Although this is not a Medical Appeal, Sergeant Wedertz contacted
             Medical Staff in regarding to the appellant's missing medical
17           appliances and medication.  Sergeant Wedertz was advised by
             Medical Staff that there was a doctor's order from another
18           institution prescribing a knee brace and shoe inserts for the
             appellant, however, there were no current medical chronos that
19           would indicate these items were issued to the appellant.  Sergeant
             Wedertz was also advised by Medical Staff that there were no
20           current doctor's orders for soft shoes or migraine medication
             prescribed to the appellant.  The appellant should contact the
21           Medical Staff to further address his medical issues.

22   (Id. at 62.)

23           Authorized deprivations of property are permissible if carried out pursuant to a regulation

24   that is reasonably related to a legitimate penological interest.  Turner v. Safley, 482 U.S. 78, 89

25   (1987).  According to the exhibits attached to the second amended complaint, defendants did not

26   allow plaintiff to have his medical appliances and migraine medication because they were not

27   authorized by current chronos or current doctor's orders.  Under these circumstances, the

28   deprivation of this property was reasonably related to a legitimate penological interest, i.e.,

4

1    inmates may possess medical devices and medication only with current chronos and doctor's

2    orders.

3         In the second amended complaint, plaintiff alleges that he had current medical chronos

4    and doctor's approval for his medical devices and migraine medication.  If this is true, then the

5    deprivations were not authorized.   Under these circumstances, plaintiff does not state a colorable

6    due process claim.  Hudson v. Palmer, 468 U.S. 517, 533 (1984).

7         Plaintiff may also be attempting to raise an Eighth Amendment claim based on his denial

8    of access to the medical appliances and migraine medication.  To establish a violation of the

9    Eighth Amendment based on inadequate medical care, a plaintiff must demonstrate "acts or

10   omission sufficiently harmful to evidence deliberate indifference to serious medical needs."

11   Estelle v. Gamble, 429 U.S. 97, 106 (1976).  In other words, the plaintiff must show the existence

12   of (1) a serious medical need; and (2) a deliberately indifferent response by the defendant.  Jett v.

13   Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

14        A defendant acts with deliberate indifference when he knowingly fails to respond to a

15   serious medical need, thereby inflicting pain on the plaintiff.  See Farmer v. Brennan, 511 U.S.

16   825, 837-42 (1994); Jett, 439 F.3d at 1096.  Deliberate indifference may appear when a defendant

17   denies, delays, or otherwise interferes with medical treatment.  See Hutchison v. United States,

18   838 F.2d 390, 394 (9th Cir. 1988).

19        Plaintiff does not allege that any of the named defendants actually removed his medical

20   appliances and medication from his property.  Instead, he appears to allege that the defendants

21   denied his administrative grievances regarding the alleged confiscation of his medical appliances

22   and medication.  For example, named as a defendant is CCI Correctional Sergeant Wedertz, the

23   prison official who investigated plaintiff's claims regarding the alleged confiscation of these

24   items for the first level appeal.

25        "[A] plaintiff may establish liability on the part of defendants involved in the

26   administrative grievance process under the Eighth Amendment by alleging that his appeal put the

27   defendants on notice that he had a serious medical need that was not being met, and that their

28   denial therefore constituted deliberate indifference." Uriarte v. Schwarzenegger, 2011 WL

1    4945232 at * 6 (S.D. Cal. Oct. 18, 2011.); see Wood v. Housewright, 900 F.2d 1332, 1334 (9th

2    Cir. 1990) (holding that prison officials manifest a deliberate indifference to a prisoner's medical

3    needs if they intentionally deny, delay or interfere with medical treatment).

4         Plaintiff has plead no facts suggesting deliberate indifference by the defendants involved

5    in the decisions denying his grievances regarding the alleged confiscation of his medical

6    appliances and migraine medication.  Plaintiff does not allege that any defendant knew that he

7    had current chronos and doctor's approval for his medical appliances and migraine medication.

8    Plaintiff's grievances regarding this matter, attached as exhibits to the second amended

9    complaint, did not include the current chronos and doctor's orders.  Plaintiff's grievances also did

10   not inform the defendants reviewing the grievances of the allegedly current chronos and doctor's

11   orders.  In his response to the first level grievance, defendant Wedertz told plaintiff to contact the

12   medical department if he wanted to obtain these devices and medication.  Under these

13   circumstances, the undersigned does not find that the defendants who denied plaintiff's chronos

14   regarding the alleged confiscation of his medical appliances and migraine medication acted with

15   deliberate indifference.

16        Plaintiff alleges that the confiscation of his legal property and photograph violated his

17   right to access the courts.  To establish a violation of the right of access to the courts, a prisoner

18   must establish that he has suffered an actual injury.  Lewis v. Casey, 518 U.S. 343, 349 (1996).

19   An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as

20   the inability to meet a filing deadline or to present a claim."  Lewis, 518 U.S. at 348.

21        Regarding his legal property, in the second amended complaint plaintiff alleges that he

22   had six boxes of property, 85% to 90% of which contained legal material.  (ECF No. 20 at 22.)

23   Plaintiff alleges that due to the large volume of legal property that was confiscated, "there is no

24   way" he can tell the court how the destruction of these documents impacted his case.[1]  (Id. at 22.)

25   ────────────────────
     [1] Attached to one of plaintiff's grievances is a list he made of his missing legal property.  (Id. at
26   73.)  Plaintiff lists his missing legal property as follows:  1) one page from the three strikes
     manual; 2) one page from his Sacramento County Jail property inventory; 3) 104 pages of
27   discovery; 4) ten pages of Sacramento County Message Requests; 5) an unknown quantity of
     legal notes; 6) an unknown quantity of legal exhibits which included photographs, jury selection
28   notes and diagram, legal folders and legal envelopes, brown legal files, and two pages of

1   Plaintiff alleges that he is missing trial transcripts from December 7, 2007, which would prove

2   that he was never found guilty of violating probation.  (Id.)  Plaintiff alleges that he would not

3   have received an extra year on his sentence if he had had the transcripts from December 7, 2007.

4   (Id. at 22-23.)

5        Plaintiff alleges that the "photos" he did not receive were family photos.  (Id. at 23.)

6   Plaintiff alleges that some of these "photos" showed his actual whereabouts on the day certain

7   crimes were committed and supported his claim of actual innocence.  (Id.)

8        The only documents plaintiff specifically identifies as possibly impacting any pending

9   litigation are the trial transcript from December 7, 2007, and the missing photographs.  Plaintiff

10  alleges that the missing transcript would have shown that he did not violate his probation.

11  Plaintiff does not allege why he could not obtain another copy of the December 7, 2007

12  transcript.  Plaintiff also does not allege whether he was represented by counsel at the

13  proceedings where he was found guilty of violating probation.  Plaintiff also does not allege why

14  he did not ask for an extension of time in order to obtain the transcript or otherwise bring to the

15  trial court's attention the existence of the December 7, 2007 transcript.  Under these

16  circumstances, the undersigned does not find that the alleged confiscation of the December 7,

17  2007 transcript prejudiced plaintiff's criminal case or made him unable to challenge his sentence

18  for violating probation.

19       Plaintiff's claim regarding the photographs is vague and conclusory.  In the first place, his

20  claim in the second amended complaint that he is missing numerous photos conflicts with the

21  statements in the grievances that all but one of the missing photos were found and returned to

22  plaintiff.  In any event, plaintiff does not describe the litigation in which he intended to use these

23  photographs.  Plaintiff also does not discuss whether these photographs were previously

24  considered by any court.  Plaintiff's claim that the photographs demonstrated his actual innocence

25  is vague and unsupported.  Because plaintiff's claim regarding the photographs is vaguely plead,

26  the undersigned does not find that the alleged confiscation of these photographs violated

27  _____

28  Sacramento County Jail grievances.  (Id.)   The undersigned observes that plaintiff was able to list
    his missing legal property with some specificity in this document.

7

1    plaintiff's right to access the courts.

2          *Legal Mail*

3          Plaintiff allegedly gave defendant Gray a piece of legal mail addressed to plaintiff,

4    himself, to be mailed.  (ECF No. 20 at 89.)  The mail consisted of a large manila envelope,

5    apparently containing legal property.  (Id.)  Plaintiff did not receive the envelope in the mail after

6    giving it to defendant Gray.  (Id.)  Plaintiff alleges that because the mail was "legal" mail, it did

7    not have postage on it.  (Id.at 26.)  Plaintiff alleges that legal mail is mailed at the institution's

8    expense.  (Id.)  Plaintiff alleges that his envelope could not have left the institution because it did

9    not have postage on it.  (Id.)

10         Although plaintiff uses the term "legal mail," he is referring to "confidential mail," as

11   defined by the California Code of Regulations.  The California Code of Regulations, Title 15, §

12   3141(c) lists the persons with whom inmates may correspond confidentially.  These persons

13   include all state and elected officials, all officials of foreign consulates, etc.  Cal. Code of Regs.,

14   tit. 15, § 3141(c).  Title 15, section 3142, sets forth the procedures for processing outgoing

15   confidential mail, which includes the inmate presenting the unsealed envelope to designated staff,

16   who then inspect the contents.  In addition, the address of the person to whom the mail is being

17   sent must be on the envelope.

18         The First Level Appeal response states that after an investigation, it was determined that

19   plaintiff's mail was not sent through the Legal Mail process.  (ECF No. 20 at 83.)  The First Level

20   Appeal Response describes the investigation:

21              Correctional Sergeant Peters interviewed Correctional Officer
22              Negrete who conducts Legal Mail for Facility B.  Officer Negrete
                checked the Legal Mail log and according to the log book, there
                was no legal mail sent to the Appellant from the Appellant on,
23              before, or after the day the Appellant claims to have sent this
                envelope (September 27, 2011).  Furthermore, the Facility B log
24              book shows an outgoing mail entry for the Appellant on September
                22, 2011 (6 days prior) addressed to the Officer of TIG P.O. Box
25              346780, Sara, Co. 95034.  The CCI Mailroom Legal Mail Registry
                log indicates this mail was sent out of the institution (see attached
26              legal mail print out).  The next outgoing mail entry in the Facility B
                Legal Mail Log book for the Appellant was on October 3, 2007 (7
27              days later) addressed to the CCI Mailroom. This mail would be
                inner facility mail and again is not legal mail per CCR Title 15
28              sections 3141, 3142, 3143, 3144, and 3145 and would not have

                                        8

1    been logged in the CCI Mailroom Legal Mail Registry as legal mail
     and is not traceable.

2
     Correctional Sergeant Peters interviewed the appellant on
3    December 6, 2011 concerning his claim. During the interview the
     appellant stated that he knew he was being transferred to Facility A
4    and wanted to send his legal paperwork to himself so that it would
     not be put in his property, sent to Receiving and Release (R & R)
5    where he would have to wait for it to be issued to him once he
     relocated.  The appellant continued that as of the date and time of
6    this interview, he has not received the envelope back.   The
     appellant also stated that Officer Gray should have the envelope
7    because he was the last person to have it.  Correctional Sergeant
     Peters informed the appellant that the mail in question was not legal
8    mail and would not have been processed as such.  The appellant
     indicated that he knew this was a possibility when he attempted to
9    send it to himself.

10   Due to the appellant's improper processing of this mail (not
     following CCR Title 15 legal mail regulations) it is not possible to
11   track or locate the Appellant's mail in question.  All resources
     available to the CCI Mailroom Supervisor have been exhausted.

12

13   (Id. at 84.)

14        The First Amendment protects inmates' right to correspond.  Procunier v. Martinez, 416

15   U.S. 396, 408 (1974).  However, "the legitimate governmental interest in the order and security of

16   penal institutions justifies the imposition of certain restraints on inmate correspondence."  Id. at

17   412-13.  Legitimate penological interests justify restricting inmates' use of confidential mail.

18   O'Keefe v. Van Boening, 82 F.3d 322, 326 (9th Cir. 1996).

19        Plaintiff's mail addressed to himself did not qualify as confidential mail as defined by the

20   California Code of Regulations.  For that reason, it was not tracked as confidential mail.

21   Therefore, defendants could not determine what became of the envelope plaintiff mailed to

22   himself.  Because plaintiff's "confidential" mail was addressed to himself, defendants' failure to

23   process this mail as confidential did not violate plaintiff's constitutional rights.

24        Plaintiff's suggestion that it should have been obvious to defendants that his mail was not

25   legal mail, and that defendants failed to properly process his mail through the internal mail

26   system, does not state a potentially colorable claim for relief.  See Davis v. Goord, 320 F.3d 346,

27   351 (2d. Cir. 2003) (an isolated incident of mail interference or tampering will not support a

28   claim under section 1983).

9

1    Plaintiff also alleges that his lost legal mail included "legal photos," which were to be

2    used as new evidence to prove that he was actually innocent of his crimes. (ECF No. 20 at 26.)

3    Plaintiff alleges that the photos proved the whereabouts of plaintiff's witnesses and the victims on

4    the dates the crimes were alleged to have been committed.  (Id.)  Plaintiff alleges that without

5    these photos, he cannot prove his claim of actual innocence in court.  (Id.)

6    To the extent plaintiff argues that the loss of his legal mail addressed to himself violated

7    his right to access the courts, such a claim fails.  When legal mail is involved, a protected right of

8    access to the courts may be violated if prison mail procedures actually impair or hinder a

9    prisoner's presentation of grievances or the prosecution litigation.  See Royse v. Superior Court

10    of the State of Washington, 779 F.2d 573, 575 (9th Cir. 1986).  In the instant case, prison mail

11    procedures did not hinder plaintiff's presentation of his actual innocence claim.  Instead,

12    plaintiff's own attempt to thwart the prison mail procedures caused his mail to be lost.

13    For the reasons discussed above, the undersigned finds that plaintiff's claim regarding the

14    alleged misprocessing of his legal mail fails to state a potentially cognizable claim for relief.

15    Accordingly, this claim should be dismissed.

16    Conclusion

17    Plaintiff has already been granted two opportunities to amend his complaint.  Because it

18    does not appear that plaintiff can cure the pleading defects, the undersigned recommends that this

19    action be dismissed.

20    Plaintiff has filed a motion to compel (ECF No. 18) and a motion for summary judgment

21    (ECF No. 21).  Because the undersigned recommends that this action be dismissed, these motions

22    are disregarded.

23    Accordingly, IT IS HEREBY ORDERED that plaintiff's motion to compel (ECF No. 18)

24    and motion for summary judgment (ECF No. 21) are disregarded; and

25    IT IS HEREBY RECOMMENDED that this action be dismissed.

26    These findings and recommendations are submitted to the United States District Judge

27    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

28    after being served with these findings and recommendations, plaintiff may file written objections

10

1   with the court and serve a copy on all parties.  Such a document should be captioned

2   "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that

3   failure to file objections within the specified time may waive the right to appeal the District

4   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

5   Dated:  July 17, 2013

6

7                                                      KENDALL J. NEWMAN
                                                       UNITED STATES MAGISTRATE JUDGE

8

9

10   Kam2651.dis

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28